IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| MELONIE LAMPKIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 113-127 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Melonie Lampkin ("Plaintiff") appeals the decision of the Commissioner of Social Security denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

**I.  BACKGROUND**

Plaintiff applied for SSI on February 3, 2009, alleging a disability onset date of September 1, 2000. Tr. ("R."), pp. 131-34. The Social Security Administration denied Plaintiff's application initially, R. 74-82, and on reconsideration, R. 87-89. Plaintiff then requested a hearing before an

---

[1]For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Administrative Law Judge ("ALJ"), R. 90-92, and the ALJ held a hearing on August 16, 2011, R. 37-74. The ALJ heard testimony from Plaintiff, who was represented by counsel, and from Silvio Reyes, a Vocational Expert ("VE"). Id. On December 28, 2011, the ALJ issued an unfavorable decision. R. 14-34.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since February 3, 2009, the application date (20 C.F.R. §§ 416.971 *et seq.*).

2. The claimant has the following severe impairments: obesity, essential hypertension, type II diabetes mellitus, cardiomyopathy, degenerative joint disease of the lumbar spine, chronic obstructive pulmonary disease ("COPD"), and headaches (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b)[2] except she is limited to occupations that allow for a sit/stand option at will, that require no more than frequent balancing, kneeling, crawling, and climbing of ramp/stairs, occasional stooping, crouching, and climbing of ladder/ropes/scaffolds, frequent handling and fingering with both upper extremities, that avoids even moderate exposure to fumes odors, dust, gases, and poor ventilation, and avoids all exposure to dangerous machinery and unprotected heights. The claimant has no past relevant work (20 C.F.R. § 416.965).

---

[2]"Light work" is defined as work that "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 416.967(b).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)). Therefore, the claimant has not been under a disability, as defined in the Social Security Act, from February 3, 2009, through December 28, 2011 (the date of the ALJ's decision).

R. 19-30.

When the Appeals Council denied Plaintiff's request for review on June 3, 2013, R. 1-4, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred by (1) failing to properly evaluate the opinion of Dr. Fredrick House, and (2) failing to properly evaluate the opinion of Nurse Practitioner Saundra L. Joyner, which Dr. Paul D. Sormes co-signed. (See doc. no. 16 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 19 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine

whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Weight of Opinion by Treating Physicians and Consulting Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight.

Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford, 363 F.3d at 1159 (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities). Furthermore, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. § 416.927(d).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v.

Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004).  In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists.  See 20 C.F.R. § 416.927(c)(1)-(2), (5).

Moreover, the ALJ has a duty to develop the facts of the case fully and fairly.  Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984) (citing Ford v. Sec'y of Health and Human Serv., 659 F.2d 66, 69 (5th Cir. 1981)).  As part of that duty, the ALJ must "make clear the weight accorded to the various testimony considered."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Id.

However, the Eleventh Circuit has clarified "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the Court] to conclude that the ALJ considered [his] medical condition as a whole.'"  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995)) (punctuation omitted); see also McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) ("[A]n ALJ is not required to discuss every piece of evidence submitted." (quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998))).

### B. The ALJ Properly Evaluated All Evidence Pertaining to Plaintiff's Heart Impairments, Including Consultant Dr. House's Medical Opinion.

Plaintiff asserts the ALJ failed to properly evaluate Dr. House's opinion from an October 2009 consultative examination that Plaintiff had "probable coronary disease Functional Class IIIb." Pl.'s Br., pp. 15-16; R. 370. This functional rating derives from the New York Heart Association ("NYHA") Functional Classification, which classifies the functional capacity of patients with heart disease. See Classes of Heart Failure, American Heart Association http://www.heart.org/ HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM_306328 _Article.jsp (last updated Aug. 5, 2011). The Class III rating by Dr. House refers to patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest but ordinary activity causes fatigue, palpitation, dyspnea or anginal pain. Id. Plaintiff asserts that the ALJ improperly failed to consider Dr. House's functional classification, and that the limitations of a Class III patient are incompatible with the ALJ's RFC determination. Pl's Br., pp. 19-20; Pl.'s Reply, pp. 3-5. Contrary to Plaintiff's assertion, the ALJ fully discussed Dr. House's opinion, including that of Plaintiff's functional limitations.

The ALJ extensively discussed Plaintiff's alleged heart impairments and her reported limitations, including Dr. House's July 2009 and October 2009 consultative exams and the limitations described therein. The ALJ discussed Plaintiff testimony that she suffered from an enlarged heart, chest pain, shortness of breath and wheezing, as well as her statements on a cardiac treatment questionnaire that she experienced chest discomfort one or two times per week, is out of breath after climbing one step, and could no longer take long walks, run up and down steps, or stand up and talk to people. R. 26, 200-202. The ALJ also considered the documented history in Plaintiff's medical records of asthma, COPD, hypertensive cardiovascular disease, congestive heart

failure, and hypertensive ventricle with moderately severe left ventricular hypertrophy with evidence of diastolic dysfunction. R. 26.

The ALJ also specifically discussed Dr. House's July and October 2009 consultative exams, and in particular her heart impairments and functional limitations related thereto. Id. In July 2009, a chest x-ray showed "massive cardiomegaly and vascular congestion consistent with congestive heart failure and moderate left pleural effusion," and Dr. House's overall impression was severe hypertensive cardiovascular disease and congestive heart failure. R. 26, 362. Additionally, in October 2009, Plaintiff complained of "exertional dyspnea, shortness of breath at rest and typical angina type exertional and occasional chest pain at rest." R. 26, 368. The ALJ also noted that Plaintiff reported to Dr. House various functional limitations, including that "she was unable to stand for more than a few minutes, walk for [a] half block, clean her kitchen, do minimal housework and she got out of breath bathing and getting dressed." Id. Moreover, the ALJ explained that Plaintiff's lungs had scattered wheezes, a chest x-ray showed marked cardiomegaly, and she had a dilated heart with left and right chamber enlargement. R. 26, 369-70.

However, the ALJ found that the evidence, including treatment notes, suggests the symptoms related to her heart impairments were not as limiting as Plaintiff had alleged. R. 26-27. The evidence supporting this conclusion is substantial. First, the ALJ noted that a pulmonary function test performed by Dr. House in October 2009 revealed Plaintiff's effort was highly variable and her cooperation was highly questionable. R. 26, 370.

Second, the ALJ found that Plaintiff's continued smoking during her treatment and even while she reported to be unable to afford prescribed medication undermined her allegations of disabling cardiac impairments. Indeed, Dr. House noted in his October 2009 consultative exam

8

that, "[s]he has been previously advised to seek medical attention for treatment of her blood pressure but she says she cannot afford medication althought [sic] she seems to be able to afford to buy cigarettes." R. 26, 368; See Ellison v. Barnhart, 355 F.3d 1272, 1275-76 (11th Cir. 2003) (holding ALJ's consideration of noncompliance with prescribed medication treatment as factor in discrediting plaintiff's allegations of disability proper where supported by physician's opinion); Rodriguez v. Colvin, No. 8:12-CV-1592-T-33EAJ, 2013 WL 4495173, at *7 (M.D. Fla. Aug. 20, 2013) (holding that ALJ "properly considered Plaintiff's continued smoking, among other evidence, in discrediting Plaintiff's complaints.")

Third, Plaintiff's treatment records from October 2009 through September 2010, including those from Good Samaritan House Free Community Health Center ("Good Samaritan"), support the ALJ's RFC finding. The ALJ found that these treatment notes failed to document any ongoing, significant abnormalities that would preclude her from performing work in accordance with the RFC. R. 27. The ALJ noted that Plaintiff did not have any significant complaints of chest pain, shortness of breath, or wheezing. R. 26, 383-390. In December 2009, Plaintiff complained of non-radiating discomfort around her heart, but reported that she had been without her medication for four weeks. R. 26-27, 384. Additionally, an examination of her heart and lungs was normal. Id. In January 2010, she reported atypical chest pain, but nothing significant was documented during the examination. R. 27, 385-87. In May 2010, Plaintiff sought emergency room treatment with complaints of chest numbness, but her breathing was non-labored and clear. R. 27, 396-97. And finally in September 2010, Plaintiff again sought emergency room treatment and the physician assessed chest pain and diastolic dysfunction, but Plaintiff was ambulatory, nothing abnormal was documented during the examination, and she was discharged home. R. 27, 434-438.

9

Importantly, the Functional Class IIIb rating by Dr. House supports rather than contradicts the ALJ's finding that Plaintiff's symptoms were not as limiting as Plaintiff had alleged. Indeed, the classification system utilized by Dr. House has a subjective and objective component, as follows:

| Class | Functional Capacity: How a patient with cardiac disease feels during physical activity |
|---|---|
| I | Patients with cardiac disease but resulting in no limitation of physical activity. Ordinary physical activity does not cause undue fatigue, palpitation, dyspnea or anginal pain. |
| II | Patients with cardiac disease resulting in slight limitation of physical activity. They are comfortable at rest. Ordinary physical activity results in fatigue, palpitation, dyspnea or anginal pain. |
| III | Patients with cardiac disease resulting in marked limitation of physical activity. They are comfortable at rest. Less than ordinary activity causes fatigue, palpitation, dyspnea or anginal pain. |
| IV | Patients with cardiac disease resulting in inability to carry on any physical activity without discomfort. Symptoms of heart failure or the anginal syndrome may be present even at rest. If any physical activity is undertaken, discomfort increases. |

| Class | Objective Assessment |
|---|---|
| A | No objective evidence of cardiovascular disease. No symptoms and no limitation in ordinary physical activity. |
| B | Objective evidence of minimal cardiovascular disease. Mild symptoms and slight limitation during ordinary activity. Comfortable at rest. |
| C | Objective evidence of moderately severe cardiovascular disease. Marked limitation in activity due to symptoms, even during less-than-ordinary activity. Comfortable only at rest. |
| D | Objective evidence of severe cardiovascular disease. Severe limitations. Experiences symptoms even while at rest. |

See Classes of Heart Failure, American Heart Association http://www.heart.org/HEARTORG/ Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_UCM _306328_Article.jsp (last updated Aug. 5, 2011). Plaintiff touts the Class III rating by Dr. House, but this merely classified Plaintiff's subjective complaints. Plaintiff never mentions Dr. House's objective

classification of B, which provides that he found evidence of only "minimal" heart impairments with merely "mild symptoms and slight limitation during ordinary activity." See id.; R. 370. Accordingly, although Plaintiff makes much of this rating, it supports the ALJ's conclusion that her objective heart impairments were not as limiting as Plaintiff's subjective complaints. This objective determination is entirely consistent with the RFC as determined by the ALJ.

In sum, the ALJ properly evaluated all evidence related to Plaintiff's heart impairments and limitations, including a thorough discussion of Dr. House's October 2009 consultative examination, and found, based on substantial evidence, that her impairments did not preclude her from performing light work in accordance with the RFC finding. Todd, 736 F.2d at 642; Dyer, 395 F.3d at 1211.

### C. The ALJ Properly Evaluated the Residual Capacity Questionnaire and Pain Evaluation Form Completed by Nurse Practitioner Joyner and Cosigned by Dr. Sormes.

Plaintiff asserts the ALJ did not show good cause for disregarding a July 2011 Residual Functional Capacity Questionnaire and Pain Evaluation Form completed by Nurse Practitioner Joyner and co-signed by Dr. Sormes. Pl.'s Br., pp. 21-23. The form diagnosed Plaintiff with diabetes, hypertension, arthritis, obesity, and an enlarged heart and opined Plaintiff (1) could not perform sedentary work on a sustained basis; (2) was only able to sit for about two hours; (3) was only able to stand/walk for less than two hours in an eight-hour workday; and (4) could only lift less than ten pounds rarely. R. 445-450. She also stated Plaintiff needed a job that permitted shifting positions at will from sitting, standing, or walking, taking unscheduled breaks during an eight-hour workday four to five times per day for twenty minutes, and using a cane or other assistive device in occasional standing and walking. Id. Lastly, she stated that Plaintiff

experienced pain or other symptoms severe enough to interfere with her attention and concentration needed to perform even simple tasks frequently, she was unable to concentrate and/or complete tasks in a timely manner due to pain, and she was likely to be absent from her work as a result of the impairments or treatment more than four days per month. Id. At the hearing, the VE testified that an individual with these limitations would be "significantly limit[ed] if not preclude[ed] . . . from engaging in competitive employment." R. 69-72.

The ALJ found the opinion of Nurse Practitioner Joyner and Dr. Sormes neither controlling nor persuasive, and gave it minimal weight because it was not supported by the substantial weight of the objective evidence. R. 28. The ALJ made this conclusion because he found the opinion inconsistent with Plaintiff's conservative treatment history, the essentially negative examination signs and findings contained in the outpatient examination notes that were created contemporaneously with treatment, and the clinical findings documented during Dr. House's examinations. R. 28.

Plaintiff asserts the ALJ did not articulate good cause to reject the opinion because (1) there is no "non-conservative treatment" for hypertension and there is no indication Lampkin's heart disease is amenable to surgery; (2) Nurse Practitioner Joyner's and Dr. Sormes' treatment notes show that Plaintiff's blood pressure remained high and spiked to extremes even though she was apparently compliant with medications; (3) Dr. House's finding of "probable coronary disease Functional Class IIIb," supports the opinion; (4) the ALJ did not use the regulatory six-factor analysis, which the Eleventh Circuit requires; and (5) the opinions of non-examining doctors are entitled to little weight and are not, standing alone, substantial evidence. Pl.'s Br., pp. 21-23. Here, the Court finds that the ALJ properly discounted the opinion of Nurse Practitioner Joyner

and Dr. Sormes.

Plaintiff's assertions One, Two, Four, and Five are meritless because the ALJ properly evaluated the opinion in light of the regulations, case law, and other evidence. Plaintiff asserts that the ALJ did not use the regulatory analysis contained in 20 C.F.R. § 416.927(c)(1)-(6) to evaluate the opinion, which plaintiff states is mandatory. Pl's Br., pp. 21-23 (citing Davis v. Comm'r of Soc. Sec., 449 F. App'x 828, 832 (11th Cir. 2011)). In Davis, the Eleventh Circuit stated that, "[t]he ALJ is to consider a number of factors in determining the weight to give to each medical opinion: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's 'opinion is with the record as a whole'; and (5) the doctor's specialization." 449 F. App'x at 832 (citing 20 C.F.R. § 416.927). If the ALJ disregards the treating physician's opinion, he must articulate "good cause" for doing so, which "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." Id. at 833. Here, the ALJ articulated good cause for disregarding Nurse Practitioner Joyner's opinion, cosigned by Dr. Sormes, and therefore he properly evaluated the opinion in accordance with § 416.927(c). See Davis, 449 F. App'x at 832; Lewis, 125 F.3d at 1440.

First, the ALJ noted that Plaintiff's treatment notes were not consistent with the debilitating limitations in Nurse Practitioner Joyner's later-penned opinion, co-signed by Dr. Sormes. See R. 24-27. With respect to Plaintiff's hypertension and cardiac treatments, the ALJ relied on substantial evidence from Plaintiff's medical history to conclude that conservative treatment and

medication management reasonably controlled those conditions when she was compliant. R. 25. Indeed, the ALJ noted that from Plaintiff's initial visit to Good Samaritan in October 2009 to November 2009, her blood pressure had improved with medication from a reading of 250/160 to 177/107. R. 25, 383. At her next appointment in December 2009, she reported she had been out of blood pressure medication for four weeks and her reading was elevated to 205/118. R. 25, 384. At her next visit in January 2010, her reading improved to 147/109. The ALJ noted that each time Plaintiff's blood pressure was uncontrolled thereafter, she reported she needed medication. See R. 25, 387; cf. 388-89.

Additionally, the ALJ relied on substantial evidence in the record showing her diabetes was "reasonably controlled with conservative treatment and medication management" without any significant, ongoing diabetes-related symptoms. R. 27. Indeed, the ALJ relied on record evidence from December 2006 through February 2007, showing that Plaintiff's diabetes was uncomplicated, there was no documentation of any diabetes-related complaints thereafter in the records, and she indicated during Dr. House's July 2009 exam that her diabetes was untreated. R. 27, 300, 312, 316, 362. Moreover, when Plaintiff began to receive ongoing outpatient treatment in October 2009, "her blood sugar level stabilized." R. 27, 383-389.

Likewise, while Nurse Practitioner Joyner indicated Plaintiff had limitations from back pain and corresponding arthritis, the record showed only routine and conservative care. R. 22-24, 316-33. The ALJ noted no evidence of back surgery, emergency room treatment or hospitalization for back pain, physical therapy or pain clinic treatment, use of an ambulatory aide, brace, or Transcutaneous electrical nerve stimulation ("TENS") unit, or even ice or heat for back pain. R. 23. In 2007, Plaintiff sought treatment on only two occasions with complaints of low back pain,

but on both occasions the exam revealed no significant abnormalities with her musculoskeletal or neurological systems, no indication that she had any difficulty walking, standing, or sitting, and no medical necessity to lie down during waking hours to alleviate her back pain. R. 23, 316-33.

Furthermore, Dr. House's examinations failed to reveal any significant abnormalities. In July 2009, Dr. House's exam revealed she had moderate degenerative joint disease, but no disc disease, she had a normal gait, station, and movement, and the Romberg test was negative. R. 23, 360-67. In October 2009, Dr. House found Plaintiff displayed "waddling broad based gait, slightly unsteady." R. 23-24, 369-70. However, he attributed this to her obesity, not her arthritis, and the exam revealed normal range of motion in her spine, intact tandem gait, a negative Romberg test, and no documentation of a positive straight leg raise. R. 24, 370. Lastly, the ALJ additionally noted that Plaintiff's treatment records from Good Samaritan show that she only complained about low back pain once. R. 24, 385-386. A physical examination revealed a negative straight leg raise, no paravertebral spasm, and she was told to avoid the same position for a long time. Id. The ALJ incorporated this into his RFC determination that required a sit/stand option. R. 24.

Finally, as to Nurse Practitioner Joyner's diagnosis of an "enlarged heart," the ALJ thoroughly discussed this condition and determined, based on substantial evidence, that the limitations caused by this condition are not nearly as severe as Plaintiff complained. See § III.A, *supra*; R. 27-28.[3]

---

[3] Because an enlarged heart is "usually the result of high blood pressure," much of the ALJ's discussion of the evidence related to Plaintiff's hypertension also relates to this diagnosis. See Enlarged Heart (Cardiomegaly), WEBMD, http://www.webmd.com/heart-disease/guide/enlarged-heart-causes-symptoms-types (last visited Sept. 16, 2014).

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 16th day of September, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA